Filed 4/12/16  Marriage of Chang and Kelly CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| In re Marriage of KUEI FAN CHANG and RAYMOND D. KELLY. | B259848 |
| KUEI FAN CHANG,<br><br>Appellant,<br><br>v.<br><br>RAYMOND D. KELLY,<br><br>Respondent. | (Los Angeles County Super. Ct. No. KD080573) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rocky L. Crabb, Commissioner.  Affirmed.

Law Offices of George L. Young and Steven L. Sugars for Appellant.

Heidi Romeo & Associates and Heidi H. Romeo for Respondent.

_____

Kuei Fan Chang challenges trial court orders awarding Raymond Kelly spousal support and attorney fees in their marital dissolution case. Chang contends the court's orders were not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, Kuei Fan Chang filed a petition seeking dissolution of her marriage to Raymond Kelly. Kelly's August 2011 response requested spousal support and attorney fees. Kelly's accompanying income and expense declaration stated he was unemployed and permanently disabled, he had no income, and he had total average monthly expenses of $2,040. He estimated that Chang's monthly income was $7,000, based on her wages, government benefits for her disabled child, and monies she received from three "foreign exchange students." In an October 2011 income and expense declaration, Chang stated she had an average monthly income of $2,198, all of which came from wages she earned as an employee of China Airlines, along with almost $70 per month from overtime and commissions or bonuses. She identified $200 in assets in the form of deposit accounts. She also declared total average monthly expenses of $2,040.

In a March 2014 income and expense declaration, Chang identified her average monthly income as $2,011 from salary or wages from China Airlines, and $2,000 in rental property income. In an April 2014 income and expense declaration, Kelly stated he received monthly state disability insurance payments of $997. He estimated Chang's monthly income at $12,000. The matter was set for trial. Chang argued in a trial brief that her monthly gross income was $2,198 and she was responsible for the support of her two minor children from a previous marriage, including a son who suffers from severe cerebral palsy and heart problems. She further argued Kelly was able to work at least part time. Kelly argued in his trial brief that Chang had sources of income besides her employment as an airline cargo agent. Kelly asserted Chang received money from her father; from foreign students who lived in Chang's house and paid rent; and from real estate sales. Kelly asked that the court find Chang's income to be $12,000 per month.

2

At the April 2014 trial, Chang testified she earned $2,190 per month, but she also paid a mortgage and financially supported her two children.[1] She anticipated paying over $35,000 in college tuition and expenses for her daughter beginning in September 2014.[2] She testified that her disabled son's behavioral issues prevented her from continuing to hold a second job in real estate. Her father paid $600 per month for classes for her son. Chang testified she held the power of attorney on a China Trust bank account belonging to her father but she had no ownership interest in the account. She further testified there were community property debts of $108,000. The court asked why these debts were not mentioned in her trial brief. Chang asserted she did not mention the debts because she did not know Kelly was seeking spousal support at the time. However, the court noted Kelly had asked the court for spousal support in August 2011.

During her presentation of evidence, Chang testified that between June and August 2013, she earned $2,000 in cash in the real estate business. She did not report the money on her tax return. She asserted that in 2011, she also made approximately $2,000 from real estate work. She testified her mortgage was over $4,000 per month. She paid $3,000 of the amount, including with $2,000 of rental income, and her father paid the rest— around $12,000 per year. She testified her father also paid her annual property taxes, which were $8,744.31.

Kelly's attorney called Chang as a witness pursuant to Evidence Code section 776. Chang testified her only sources of income were her wages and $2,000 in rental income. However, she admitted that when she filled out a loan application in June 2013, she claimed her monthly income was $12,000. Chang conceded she is a licensed real estate agent in California, she knew loan applications are supposed to be truthful, yet she

---

[1]     Chang represented herself at trial; Kelly had legal counsel.

[2]     Chang suggested she might borrow money from her family in Taiwan to pay the college costs.

3

testified her loan application was "not truthful."[3] She testified that although she rented out rooms in her house and received $2,000 in rental income every month, she did not report that income on her tax returns in 2013.[4] She claimed that although her father helped her financially, she would eventually pay him back.

Chang further admitted that in 2011, 2012, and from January to September or October 2013, a foreign student lived with her. His family paid Chang $1,200 per month. She did not report this income on her tax return. Two other students lived with her in 2011 and at least part of 2012; she received $1,200 per month for one student and $1,000 for the other. However, Chang asserted the money was not income to her but was instead for the students' food and a stipend. According to Chang, she was paid only around $50 to $200 per month for her "labor" for each student. She did not report any of this income on her tax return.

Chang admitted she had access to the China Trust bank account she claimed her father owned. She testified he deposited money into the account and she was able to use it for her own purposes, with his permission. According to Chang, her father had put around $4,000 to $5,000 in the account in the past year for her to use. He also paid her monthly car payment of $298.

Kelly's counsel introduced into evidence Chang's bank statements showing total deposits into her checking account of $52,210, an average of over $4,300 per month, between January and September 2013. In 2012, the statements showed total deposits of $47,306, an average of nearly $4,000 per month, and in 2011, the statements showed total deposits of $73, 956, an average of over $6,100 per month. Between January and September 2013, deposits to the China Trust account averaged over $5,000 per month.

---

[3]  The loan appeared to be a $500,000 mortgage for Chang's seven-bedroom home. A loan purpose declaration Chang signed under penalty of perjury indicated the loan proceeds were to be used primarily to acquire, improve, or maintain rental property, and neither Chang nor her family members would occupy residential housing on the property. However, Chang and her family lived in the property.

[4]  The house included an upstairs two-bedroom rental unit.

4

Kelly testified he received payments from a worker's compensation settlement of over $900 per month. The payments were to end in July 2015. He anticipated receiving a "disability pension" of around $240 or $260 per month after July 2015. In 2012 and 2013, he also earned $600 per month babysitting his niece's son. Kelly's 2013 income was $4,200, as reflected on his tax return. Kelly testified he owed over $14,000 in attorney fees. He further indicated he was living with his parents. He paid them $400 in rent per month. In rebuttal, Chang testified Kelly had done some maintenance work during the marriage. She asserted he received payment for the work in cash and did not report it. She argued this established he was able to work.

The trial court found the parties had a middle class standard of living during the marriage; Kelly earned $4,200 in 2013 and would receive worker's compensation benefits of less than $1,000 until July 2015; and Kelly had been denied social security disability benefits but was challenging the denial. The court further found Chang declared her income to be $12,000 in 2013; she operated an unlicensed boarding business; and she worked in real estate, is a licensed real estate agent and is paid "under the table" by her broker. The court found Chang received regular monetary gifts from her father and, when her checking account and the China Trust account were combined, she received regular deposits averaging more than $9,800 per month in 2013. The court rejected Chang's assertion that her bank accounts were really her father's business accounts. Instead, the court concluded they were accounts Chang used.

The court found Chang did not meet her burden to show Kelly's ability to work, or that he had the opportunity to actually earn money. The court noted the 52-year-old Kelly was now living with his parents, was partially disabled, and suffered back problems. The court found Kelly's stated need of $2,000 per month was reasonable. The court further found Chang is 49 years old, with no apparent health issues preventing her full employment.

The court ordered Chang to pay Kelly $2,000 per month in spousal support from May 2014 to January 2018, a 45-month period that is one-half the length of the marriage. The court further awarded Kelly attorney fees under Family Code sections 271 and

5

2030.[5]  The court noted Chang's inaccurate income and expense declarations and explained:

"As a direct consequence of petitioner's failure to acknowledge income from all sources, the respondent was required to utilize the services of his attorney to conduct formal discovery of bank records and real estate records.  With income from her job at China Airlines, as well as financial assistance and her other endeavors, the court finds that the petitioner's earnings are something in the area of $8,000 to $12,000 gross per month and, therefore, finds that she is able to pay attorney fees under Family Code section 2030.  Even without that ability to pay, under Family Code section 271, the petitioner is ordered to pay attorney fees.  The court finds that the petitioner's conduct in misrepresenting her income beginning in 2011 that has continued up until the present time has frustrated the policy of the law to promote settlement and reduce the costs of litigation and the respondent's litigation fees will, therefore, be born primarily by petitioner."

The court ordered Chang to pay $15,000 in attorney fees.  Chang's appeal from the judgment timely followed.

## DISCUSSION

### I.    The Spousal Support Order Was Not an Abuse of Discretion

On appeal, Chang contends the trial court's award of spousal support was an abuse of discretion because it was unsupported by the evidence.  We disagree.  "An award of spousal support is a determination to be made by the trial court in each case before it, based upon the facts and equities of that case, after weighing each of the circumstances and applicable statutory guidelines.  [Citation.]  In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it . . .  In awarding spousal support, the court must consider the mandatory guidelines of section 4320.[6]  Once the court does so, the ultimate decision as

------

[5]      All further statutory references are to the Family Code.

[6]      Section 4320 sets forth the factors the court must consider in ordering spousal support.  As the provision read in 2014, these were:  "(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

6

to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion. [Citation.] 'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in

---

(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.
(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.
(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.
(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.
(d) The needs of each party based on the standard of living established during the marriage.
(e) The obligations and assets, including the separate property, of each party.
(f) The duration of the marriage.
(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.
(h) The age and health of the parties.
(i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.
(j) The immediate and specific tax consequences to each party.
(k) The balance of the hardships to each party.
(*l*) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.
(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325.
(n) Any other factors the court determines are just and equitable." (Former Fam. Code, § 4320.)

7

reviewing these orders.' [Citation.]" (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93.)

Chang's sole argument is that substantial evidence did not support the trial court's finding regarding her income. She argues the evidence established that in April 2014, her income was only $2,011 per month. She asserts that although she had a real estate license, she is not employed as a realtor, and instead spends her time taking care of her disabled child and working at the airline. According to Chang, "[i]t boggles the mind as to why the court decided to impute such a huge income to Petitioner in April of 2014, when there was no evidence that, in April 2014, Petitioner had any income other than her $2,011 per month China Airlines job."

Yet, as Kelly points out on appeal, Chang has ignored significant portions of the evidence adduced at trial. Indeed, Kelly argues Chang waived her right to challenge the trial court's judgment by failing to present all of the material evidence in her opening brief and in the appellant's appendix. This argument is not without merit. When challenging a trial court's factual findings based on insufficient evidence, the appellant has the burden of setting forth all material evidence on point, including evidence both favorable and unfavorable to the appellant's position. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*); *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658 (*Boeken*).) Chang's opening brief fails to summarize or even acknowledge the evidence that Chang received regular income in addition to her China Airlines wages. Her failure to provide a fair statement of all of the material evidence relevant to the trial court's findings would permit us to find she has forfeited any argument regarding alleged insufficiency of the evidence to support the orders. (*Foreman, supra,* 3 Cal.3d at p. 881; *Boeken, supra*, 127 Cal.App.4th at p. 1658; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) However, we have elected to review the entire record and conclude substantial evidence supports the trial court's orders in favor of Kelly, as discussed below, and the court therefore did not abuse its discretion.

8

There was evidence Chang had regular sources of monthly income in addition to the wages she earned from China Airlines. In 2013, Chang earned $2,000 in cash from her real estate work. She had similarly earned $2,000 in real estate related earnings in 2011. She regularly had paying student boarders. She also received rental income of $2,000 per month. Chang admitted her father gave her $1,000 per month on a regular basis to help pay her mortgage, as well as $5,000 each year for her to use as she saw fit. He also paid her property taxes every year in an amount in excess of $8,000. (See *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1241-1244 [trial court did not abuse discretion in considering regular monetary gifts spouse received when determining spousal support award].)

There was further evidence that on a regular basis, sums significantly in excess of $2,000 flowed into Chang's bank account. Chang's bank account statements showed she regularly received deposits of over $4,000 per month between January and September 2013. Statements from the two prior years showed average monthly deposits of around the same or more. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 37 [no abuse of discretion in court's imputing income to mother in child support matter based on monthly deposits to her bank account].) Further, between January and September 2013, there were regular average deposits of $5,887 per month into the China Trust account. In 2012, the average monthly deposits were $3,960, and in 2011, the average monthly deposits were over $3,744 per month. Although Chang argued the account was her father's and she could only use the money with his permission, there was also evidence that she wrote checks from the account and used the deposited funds. It was for the trial court to determine whether it found Chang's testimony credible that she did not have total control over those funds.

Moreover, Chang admitted that in June 2013, less than one year earlier, she represented her income to be $12,000 per month on a loan application. This by itself was evidence that her income was far greater than $2,011 per month. (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 109 [loan application standing alone constituted substantial evidence of parent's income in child support matter].)

9

We also note evidence of Chang's repeated untruthfulness significantly damaged her credibility. She testified at trial that she lied on the loan application. She admitted that in her most recent tax return she failed to report multiple sources of income. Chang's income and expense declarations submitted to the court omitted income such as her real estate related income and income received from her boarders. The first declaration did not include her rental income. The trial court could reasonably question the veracity of Chang's assertion during the dissolution proceedings that her income was only a little over $2,000 per month. (*In re Marriage of Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 31 [when party submits misleading or false information to family law court, court may draw adverse factual inferences].) On appeal, we do not reconsider the trial court's credibility determinations. (*Id.* at p. 34.)

The amount of her income is the only basis for Chang's challenge to the spousal support award. Her sole contention is the only evidence the trial court had to consider was that of her China Airlines wages and the false loan application. The record clearly demonstrates this contention is inaccurate. The evidence amply supported the trial court's determination that Chang's income and assets, as well as the other section 4320 factors, warranted a spousal support award of $2,000 to Kelly.

## II.     Substantial Evidence Supported the Attorney Fee Award

Chang also argues that under either section 2030 or section 271,[7] the attorney fee award was an abuse of discretion because there was no evidence she was earning more

---

[7]     Under section 2030, in a dissolution proceeding, the court must "ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) When a request for attorney fees is made, the court must "make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2).)

Under section 271, "the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy

than around $2,011 per month, and, even as a sanction under section 271, the award imposed an unreasonable financial burden to her. For the reasons explained above, the trial court did not abuse its discretion in concluding Chang's monthly income far exceeded $2,011. Thus, we reject Chang's sole argument challenging the attorney fee award.

## III.    Respondent's Motion for Appellate Sanctions

Kelly seeks sanctions against Chang for filing a frivolous appeal. We may find an appeal frivolous "when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) However, "[a]n appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions . . . the punishment should be used most sparingly to deter only the most egregious conduct." (*Id.* at pp. 650-651.)

Certain aspects of Chang's prosecution of this appeal are extremely questionable. As noted above, Chang's opening brief fails to acknowledge substantial portions of the evidence which supported the trial court's orders. Her appendix omitted certain evidence that was unfavorable to her position, although we also note the same evidence was discussed in detail in the reporter's transcript. She did not file a reply brief. Yet, while it is apparent Chang's briefing on appeal fell short in presenting the issues, we are not persuaded the appeal itself was totally and completely without merit, such that we must conclude Chang prosecuted the appeal from an improper motive. (*In re Marriage of*

---

of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).)

11

*Flaherty, supra,* 31 Cal.3d at p. 650.)  We therefore deny Kelly's motion for appellate sanctions.[8]

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.

---

[8]    Our ruling is without prejudice to Kelly's ability to request in the trial court an award of his appellate attorney fees pursuant to sections 2030 or 271.  (See *Bardales v. Duarte* (2010) 181 Cal.App.4th 1262, 1273; *In re Marriage of James & Christine J.C.* (2008) 158 Cal.App.4th 1261, 1277-1278.)